**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Oliver Spann, Y11810, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:22-cv-03458 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Warden Ryan Woods, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Oliver Spann, a prisoner at the Sheridan Correctional Center, brings this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his conviction of first-degree murder in the Circuit Court of Cook County, Illinois. (Dkt. 1). The Court denies the petition on the merits and declines to issue a certificate of appealability.[1]

## BACKGROUND

The following facts are drawn from the state court record, including the Illinois Appellate Court's decision on direct appeal, *People v. Spann,* 2019 IL App (1st) 161225-U, and its decision affirming the denial of Petitioner's postconviction petition, 2022 IL App (1st) 210112-U. (Dkt. 20). A state court's factual findings are presumed correct in a federal habeas corpus proceeding unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Hartsfield v. Dorethy,* 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citations omitted); *Hall v. Zenk*, 692 F.3d 793, 805 (7th Cir. 2012). Mr. Spann has not set forth any evidence to rebut this presumption.

---

[1] The current Warden of Sheridan Correctional Center is Ryan Woods. He has been substituted as the proper Respondent per Rule 25(d).

1. **Petitioner's Trial**

Petitioner Oliver Spann was charged in the Circuit Court of Cook County with two counts of first-degree murder for the stabbing death of Elvis Canfield. *People v. Spann,* 2019 IL App (1st) 161255-U ¶ 3. (Dkt. 20). Before trial, Spann gave notice that he intended to assert the affirmative defense of self-defense. *Id.*

At trial, the State presented eyewitness testimony from Nakeema Hodges and Olen Hurt, both of whom knew Spann and the victim. *Id.* ¶ 4. Hodges testified that she had dated Spann for about six years and had two children with him, but that she ended the relationship in June 2013 and began dating Canfield. *Id.* Although no longer in a relationship with Spann, Hodges allowed Spann to continue to stay in her apartment after the breakup. *Id.*

On the evening of August 27, 2013, Hodges, Canfield and Hurt were drinking beer outside an apartment building on Springfield Avenue near Division Street in Chicago. *Id.* ¶ 5. Hurt briefly left to buy cigarettes and returned. *Id.* Spann, who was also in the vicinity, approached and asked Hurt for a cigarette; when Hurt refused, Spann "stormed off," walking southbound toward Hodges' apartment *Id.* Soon after Spann left, Canfield also left the area, walking westbound toward his residence. *Id.*

A few minutes later, Hodges saw Spann riding a bicycle at high speed in the direction that Canfield had just walked. *Id.* ¶ 6. Hodges realized that Spann was heading for Canfield and ran after Spann while calling out to Canfield. Surveillance video admitted at trial corroborated this sequence by showing Spann riding on his bicycle and Hodges running behind him. *Id.* ¶ 21. As Hodges rounded a corner, she saw Spann get off his bike and walk towards Canfield in the middle of the street. *Id*. Hodges testified that Spann initiated contact with Canfield and the two men began wrestling. Initially, Hodges thought Spann was punching Canfield, but then saw a knife in Spann's

hand and noticed Canfield bleeding. *Id.* She recognized the knife as one from her kitchen set at home, which Spann "always carried with him." *Id.* ¶ 6.

Hurt testified that he saw Spann and Canfield "swinging on each other," and that Spann was on top of Canfield punching him, and that Hodges pushed Spann off. *Id.* ¶ 10. Spann then fled on his bicycle. *Id.* Hurt also testified that no one had a weapon that night and he did not see anything in Spann's hand. *Id.* Dr. Eric Eason, a Cook County medical examiner, testified that the manner of Canfield's death was homicide – specifically, that Canfield sustained a stab wound to the chest that penetrated his heart and caused his death. *Id.* ¶ 12.

Spann testified in his own defense and recounted a very different story. *Id.* ¶ 17. He claimed that earlier that evening he confronted Hodges and Hurt about smoking PCP, that Canfield struck him in the head with a bottle of Hennessy, and that Canfield and Hurt beat and robbed him. *Id.* ¶ 17. According to Spann, as he was leaving with his bicycle, Canfield came up from behind, punched him, drew a knife, and threatened to kill him. *Id.* Spann said he grabbed Canfield's wrist, twisted the knife away, and stabbed him once in self-defense before fleeing because he feared retaliation from gang members. *Id.* ¶ 18. At trial, Spann testified that after being attacked by Canfield, he had to walk his bicycle away from the scene because he was too dizzy from the beating to ride it. *Id.* ¶ 17. However, surveillance video contradicted his testimony, showing him riding his bike away from the scene of the fight. *Id.* ¶ 21. The jury rejected Spann's self-defense claim and found him guilty of first-degree murder. *Id.* ¶ 27. The court imposed a 28-year sentence. *Id.*

## 2. Petitioner's Direct Appeal

On direct appeal, Spann raised three claims: 1) that his conviction should be reduced to second-degree murder because he established a mitigating factor by a preponderance of the

evidence, 2) that his twenty-eight-year sentence was excessive under the Illinois Constitution; and 3) that the circuit court improperly assessed certain fines and fees. *Id.* ¶ 2.

The Illinois Appellate Court rejected petitioner's argument that the jury should have found him guilty of only second-degree murder, concluding that the evidence was sufficient to prove first degree-murder beyond a reasonable doubt and that the jury reasonably rejected his claim of serious provocation or unreasonable self-defense. *Id.* ¶ 41. The court also found that the twenty-eight-year sentence was within the statutory range and not an abuse of discretion. *Id.* ¶ 51. Finally, the court agreed only that a remand was warranted to correct errors in the imposition of fines and fees. *Id.* ¶¶ 51-52.

The Illinois Supreme Court denied Spann's petition for leave to appeal on March 25, 2020. *See People v. Spann*, No. 125719 on March 25, 2020.

### 3. Petitioner's Post-Conviction Proceedings

On September 11, 2020, Spann filed a *pro se* postconviction petition under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq*. He alleged that his trial counsel rendered ineffective assistance in violation of the Sixth Amendment by 1) failing to impeach witness Olen Hurt with his criminal history and 2) failing to introduce evidence of the victim's violent past under *People v. Lynch,* 104 Ill. 2d 194 (1984). *People v. Spann,* 2022 IL App (1st) 210112-U ¶ 11-13.

The circuit court dismissed the petition at the first stage on December 7, 2020, finding that Spann failed to attach "affidavits, records or other evidence" to support his claims and did not provide an adequate explanation for their absence as required by § 122-2 of the Act. *Id.* ¶ 14-15. On appeal, the Illinois Appellate Court affirmed, holding that noncompliance with ¶ 122-2 was a

sufficient basis for dismissal and that Spann's explanation—his assertion that his documents were lost during transfer to Stateville Correctional Center—was inadequate. *Id.* ¶¶ 21-24.

The appellate court also found, in the alternative, that Spann's allegations did not make an arguable showing of deficient performance or prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), because he failed to identify what specific impeachment or *Lynch* evidence counsel should have introduced or how it would have changed the outcome of the trial. *Id.* ¶¶ 25-32. The court therefore affirmed dismissal. *Id.* ¶ 33.

Spann sought discretionary review, but the Illinois Supreme Court denied his petition for leave to appeal in May 2022, exhausting his available state remedies. (Exh. 6 to Resp't Answer, Dkt. 20). He subsequently filed a timely petition for writ of habeas corpus in this Court. *Spann v. Warden*, No. 1:22-cv-03458.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254, a federal court may grant habeas relief only if the petitioner demonstrates that the state court's adjudication of a claim: 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

This standard is highly deferential and demands that state-court decisions be given the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Harrington v. Richter*, 562 U.S. 86, 102 (2011). A federal court may not issue the writ simply because it concludes the state court's decision was incorrect; rather, the decision must be objectively unreasonable—a standard "difficult to meet." *Richter*, 562 U.S. at 102–03.

A state court's decision is "contrary to" clearly established federal law if it applies a rule that contradicts Supreme Court precedent or if it confronts facts materially indistinguishable from a Supreme Court case but reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A decision involves an "unreasonable application" of federal law if the court identifies the correct governing legal rules but applies it in an objectively unreasonable manner. *Id.* at 409-10. The "unreasonable application" standard is distinct from mere error; even a strong case for relief does not mean the state court's ruling was unreasonable. *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).

Under § 2254(d)(2), a federal court may grant relief for an unreasonable determination of facts only if the state court's factual findings are not fairly supported by the record. Factual findings made by state courts are presumed correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S. § 2254(e)(1); *Miller-El v. Dretke,* 545 U.S. 231, 240 (2005).

In addition, where a claim is dismissed on a state procedural ground that is independent and adequate, federal review is barred unless the petitioner shows both cause for and prejudice from the default or a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

## ANALYSIS

### 1. Grounds for Review

Petitioner raises four grounds for habeas relief under 28 § U.S.C. 2254:

1. His conviction should be reduced to second degree murder because he proved a mitigating factor by a preponderance of the evidence,

2. His 28-year sentence is excessive under the Illinois Constitution,

3. Trial counsel rendered ineffective assistance by failing to present evidence of the victim's violent history under *Lynch*, 104 Ill. 2d at 200; and

4. Trial counsel was ineffective for failing to impeach witness Olen Hurt with his criminal background. (See Dkt. 1 and Dkt. 19 at 3).

## 2. Claims 1 and 2 are Not Cognizable

Claims (1) and (2) are not cognizable on federal habeas review because they raise only questions of state law. Federal habeas relief lies solely for violations of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). It "is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 63 (1991); *Waddington v. Sarausad,* 555 U.S. 179, 192 n. 5 (2009).

Petitioner's first claim—that he was entitled to a reduction to second-degree murder because he proved a mitigating factor—is based entirely on Illinois' statutory scheme, 720 ILCS 5/9-2. The Due Process Clause does not require a state to disprove the absence of a mitigating factor it has created by statute. *Patterson v. New York,* 432 U.S. 197, 210 (1977). Whether Illinois correctly applied that statute is a state-law question beyond federal habeas review. *Huzar v. Melvin,* No. 17-C-6381, 2020 WL 868529, at *3-4 (N.D. Ill Feb. 20, 2020).

The second claim—that the 28-year sentence is excessive under the Illinois Constitution— likewise presents no federal issue. State-law proportionality challenges are not cognizable under § 2254. *McCorker v. Lashbrook*, No. 17-C-5613, 2018 WL 572833, at *4 (N.D. Ill. Jan. 26, 2018).

Accordingly, Claims (1) and (2) must be denied as non-cognizable.

## 3. Claims 3 and 4 are Procedurally Defaulted

In Claims 3 and 4, Spann alleges ineffective assistance of trial counsel. *See* 2022 IL App (1st) 210112-U ¶¶ 12-15. In Claim 3, Spann contends that his trial counsel was ineffective for

failing to introduce evidence of the victim's history of violent conduct. *Id.* In Claim 4, Spann asserts that his trial counsel was ineffective for failing to impeach Hurt with his criminal history, including his prior convictions for domestic battery and other violent acts, to support a self-defense theory under *Lynch*, 104 Ill. 2d at 200; 2022 IL App (1st) 210112-U ¶¶ 12-15.

The Illinois Appellate Court rejected both claims in petitioner's postconviction proceedings, holding that this petition failed to comply with 122-2 of the Illinois Post Conviction Hearing Act, 725 ILCS 5/122-2, because it lacked supporting affidavits or other documentation and offered only conclusory allegations. *Id.* ¶ 24.

This Court finds that Claims 3 and 4 are procedurally defaulted for the purposes of federal habeas review, because the Illinois Appellate Court's decision was based on "independent and adequate state grounds." *See Coleman,* 501 U.S. at 729-30. The petitioner cannot overcome the default because he fails to establish cause and prejudice, or a fundamental miscarriage of justice. *Id.*

A. Procedural Default Analysis

A claim is procedurally defaulted in federal habeas when the last state court to consider it rejected the claim on a state-law ground that is both independent of the federal question and adequate to support the judgment. *Id*. This rule is intended to avoid the issuance of advisory opinions: after a state court has based its ruling on an independent state law ground, any subsequent ruling on the federal claims would be advisory, because on remand, the state court would still deny the petitioner relief on the independent and adequate state law ground. *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009); *Coleman*, 501 U.S. at 729 ("Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any

independent federal ground for the decision could not affect the judgment and would therefore be advisory.").

A state law ground is "independent" when "the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012) (quoting *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010)). A state law ground is "adequate" when it is "a firmly established and regularly followed state practice at the time it is applied." *Id.; see also Beard v. Kindler,* 558 U.S. 53, 60 (2009) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). When a state court relies on such a rule, the federal court cannot review the claim unless the petitioner can overcome the procedural bar. *Coleman,* 501 U.S. at 724. To do so, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.*

Here, the Illinois Appellate Court dismissed Spann's ineffective assistance claims because his postconviction petition did not comply with 122-2 of the Illinois Post-Conviction Hearing Act. 725 ILCS 5/122-2; 2022 IL App (1st) 210112-U ¶¶ 24. Section 122-2 requires a petitioner to attach "affidavits, records, or other evidence supporting [the petitioner's] allegations or [to] state why the same are not attached." *See* 725 Ill. Comp. Stat. 5/122–2. Although Spann did include an explanation for his missing affidavits—asserting that the legal materials were lost during a prison transfer and thus unavailable—the appellate court found this explanation insufficient because he failed to specifically identify which materials were missing or what they would have shown. *Spann,* 2022 IL App (1st) 210112-U ¶¶ 24. The Illinois Appellate Court noted that Spann himself admitted that some of these documents did not actually exist. *People v. Spann*, 2022 IL App (1st) 210112-U ¶ 24 ("The defendant not only failed to attach documents to his petition, but he also

admits that at least some of the documents, he alleges were lost, never existed"). The state appellate court therefore dismissed his petition for noncompliance with 122-2. *Id.* ("We conclude that the defendant has failed to meet the evidentiary requirements of section 122-2 by failing to attach documents supporting his claims. We similarly conclude that the defendant has failed to meet the pleading requirements of section 122-2 by failing to adequately explain the documents absence.").

Illinois courts consistently enforce Section 122-2, and federal courts have repeatedly recognized that dismissals under that provision constitute an adequate and independent state ground. *See Thompkins,* 698 F.3d at 986-87; *Woods,* 589 F.3d at 373 ("[W]hen a state refuses to adjudicate a petitioner's federal claims because they were not raised in accord with the state's procedural rules, that will normally qualify as an independent and adequate state ground for denying federal review."); *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009) ("A finding of waiver by the state postconviction court is enough to establish an adequate and independent state ground."). Because the Illinois Appellate Court expressly relied on 122-2 as a separate and dispositive basis for its decision, the decision rested on an independent and adequate state law ground.

Accordingly, Claims 3 and 4 are procedurally defaulted for purposes of federal habeas review. The Court therefore turns to whether petitioner can overcome those defaults under one of the recognized exceptions—namely, by demonstrating cause for the default and actual prejudice, or by showing that failure to consider the claims would result in a fundamental miscarriage of justice. Overcoming a default under one of these exceptions is a "steep hill to climb." *Thompkins*, 698 F.3d at 987.

B. Cause Analysis

    i.   *Defining Cause*

Cause for a procedural default is established by showing that "some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 479 (1986); *see also*, *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004); *Coleman,* 501 U.S. at 753. An "external impediment" refers to a circumstance beyond the petitioner's control that cannot "fairly be attributed to him." *Coleman,* 501 U.S. at 753. The Supreme Court has explained that cause may be shown where "the factual or legal basis for a claim was not reasonably available," or where "some interference by officials" made compliance impracticable. *Carrier*, 477 U.S. at 488.

The cause inquiry therefore requires a two-step analysis: 1) the Court must identify the petitioner's "cause theory," and 2) the Court must determine whether the external impediment alleged by the petitioner prevented compliance with the state procedural rule, thus establishing cause for the default. *Johnson v. Foster,* 786 F.3d 501, 506 (7th Cir. 2015) ("To properly evaluate [the claimed impediment], we need to clarify exactly what Johnson's 'cause' theory is.").

ii.    *Petitioner's Cause Theory*

In his petition, Spann does not allege a specific "cause theory." (Dkt. 1 at 14). In other words, he does not explicitly state which external impediment prevented him from complying with § 122-2, leading to the procedural default. *Id.* Rather, Spann simply asserts that he failed to attach affidavits or other supporting material to his postconviction petition because those materials were "lost during [his] transfer to Stateville Correctional Center" by correctional officers, and that it "would be extremely difficult, if not impossible, for an incarcerated *pro se* petitioner, such as Spann, to recover this kind of documentation on his own." *Id.*

Liberally construed, Spann's "cause theory" is that state interference with his legal materials during his transfer was an external impediment that prevented his compliance with the

11

procedural rules of § 122-2. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (citation modified).

iii.     *Evaluating the Adequacy of Petitioner's Claim*

The Seventh Circuit has not directly addressed whether the loss of legal documents by correctional officers during a transfer can establish cause. However, courts' reasoning in related contexts reflects two principles: 1) state interference with a petitioner's legal materials *can* constitute an external impediment, if 2) the petitioner shows that it was the state's direct interference—and not the petitioner's own negligence—that prevented the petitioner from complying with the state procedural rule. *See, e.g., Johnson,* 786 F.3d at 506*; Weddington v. Zatecky*, 721 F.3d 456, 466 (7th Cir. 2013); *Buffalo v. Sun*, 854 F.2d 1158, 1165 (9th Cir. 1988); *Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013).

The Seventh Circuit has held that the state's confiscation of the petitioner's legal documents can constitute an external impediment. *See, e.g.*, *Weddington*, 721 F.3d at 456; *Johnson,* 786 F.3d at 506. In *Weddington*, where prison officials "confiscated all of [petitioner's] legal paperwork," including his habeas petition, and petitioner was "not allowed to retrieve them for a year," the court found the state's interference was an external impediment establishing cause for a procedural default. 721 F.3d at 456 ("[I]f Weddington's claims are credited, the confiscation of his legal materials can establish cause for his procedural default"); *see also*, *Johnson,* 786 F.3d at 506 (citing *Weddington* and stating that the "confiscation of a prisoner's legal materials can establish cause for a procedural default.").

Other circuits have taken a similar approach. In *Buffalo*, where the petitioner was denied access to his legal materials during a pandemic prison lockdown, the Ninth Circuit found that such

facts could give rise to the establishment of cause[2] on the basis of state interference. 854 F.2d 1158, 1165 (9th Cir. 1988). In *Henderson v. Palmer*, the Sixth Circuit found cause based on state interference where officials in a prison mailroom failed to deliver petitioner's legal materials to the court on time, despite the petitioner having delivered the documents to the mailroom in advance of the deadline. 730 F.3d 554, 560 (6th Cir. 2013) (finding "cause to excuse the procedural default" on the basis that "the papers were in the control of prison officials and Henderson could not influence their delivery."). In each case, state interference or incompetence, rather than neglect by the petitioner, rendered the petitioner's compliance impossible.

By contrast, where the default arises primarily from the defendant's own insufficient effort to procure the legal documents, rather than direct state interference, courts have found that the petitioner has not established cause. *See Thompkins,* 698 F.3d at 986-87. For example, in *Thompkins,* the petitioner failed to attach affidavits or explain their absence, as required by § 122-2. *Id.* The Seventh Circuit held that because the petitioner's noncompliance was due to his own failure to follow Illinois procedural rules, and not the result of an external impediment, the petitioner could not establish cause for a procedural default. *Id.*

In this case, the petitioner does not adequately allege the external impediment of state interference. Unlike in *Waddington, Buffalo,* or *Henderson,* Spann does not allege that prison officials intentionally confiscated his documents or denied him access to them. The petitioner's assertion that the documents were "lost" is not accompanied by any specific facts indicating that

---

[2] The Ninth Circuit remanded this case back to the district court for an evidentiary hearing to resolve whether the petitioner had established cause for a procedural default based on state interference with his legal materials during the lockdown. This Court interprets the decision to remand as an indication that the Ninth Circuit considered state interference with a petitioner's legal materials as an acceptable basis for establishing cause, assuming that the petitioner can provide adequate evidence to prove it.

the loss was due to intentional state misconduct. (Dkt. 1 at 14). Nor does he describe any efforts he took to locate, request, or recreate the materials. *Id.* Moreover, the state appellate court found his explanation for the missing documents insufficient, noting that some of the documents he claims were lost never existed at all. 2022 IL App (1st) 210112-U ¶ 24 ("The defendant not only failed to attach documents to his petition, but he also admits that at least some of the documents, he alleges were lost, never existed").

Cause for a default requires the showing of an "external impediment"—a circumstance beyond the petitioner's control that cannot "fairly be attributed to him." *Coleman,* 501 U.S. at 753. Spann does not show that a state-created barrier, rather than Spann's own failure to properly comply with § 122-2, caused his procedural default. His circumstances therefore fall closer to the petitioner's in *Thompkins* than those in *Weddington*. Spann's default cannot be attributed to a "circumstance beyond his control," but remains fairly attributable to the petitioner himself. *Id.*

Because Spann has not established than an external impediment prevented him from satisfying the requirements of § 122-2, he has not demonstrated cause to excuse his procedural default.

C. Prejudice Analysis

Even if Spann's petition sufficed to show cause for his procedural defaults, it would still fall short because Spann cannot show actual prejudice resulting from the alleged constitutional errors. Prejudice is established by showing that the violation of the petitioner's federal rights "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Sternes*, 390 F.3d at 1026 (emphasis in original); *see also Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir.2010); *United States v. Frady*, 456 U.S. 152, 170 (1982); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). The standard requires more than a showing

that the error had some conceivable effect on the outcome—it must be so serious that it "undermine[s] confidence in the verdict." *Strickler v. Greene*, 527 U.S. 263, 290 (1999). Although petitioner's procedural default occurred in his postconviction proceedings, the prejudice inquiry looks to whether the alleged trial errors—here, the claimed ineffective assistance of trial counsel— rendered the conviction itself unreliable. *Id.*

The record in Spann's case forecloses any finding of prejudice. Two eyewitnesses, Hodges and Hurt, testified that Spann attacked the unarmed victim, Canfield, minutes after storming away in a pique after Hurt denied him a cigarette. 2022 IL App (1st) 210112-U ¶¶ 5. The medical examiner confirmed that the fatal wound penetrated the victim's heart, and Spann himself admitted to stabbing Canfield but claimed self-defense, a claim that the jury rejected. *Id.* The accounts of Hodges and Hurt were corroborated by surveillance video that showed Spann on his bike followed by Hodges running after him. Even more importantly, the video showed Spann riding his bike away from the scene of the fight, contradicting Spann's testimony at trial that, after being attacked and beaten by Canfield and Hurt, he was walking his bicycle because he was too dizzy from the attack to ride it.

Further, there is no basis to reasonably infer that the evidence that Spann claims he would have presented absent procedural default would have undermined confidence in the verdict. Spann claims that he could have impeached Hurt with a criminal history including "fraud and drugs" but even assuming that he had such information in his lost papers, and even assuming that the information was admissible, impeaching Hurt would have been ill-advised, given Hurt's testimony that he didn't see Spann with a knife during the fight with Canfield, and in any event would have done nothing to discredit Hodges' account (which was corroborated with video). As for Canfield's supposed history of "domestic and battery," Spann's argument is entirely speculative concerning

15

what that history consisted of and, again, would do nothing to undermine the credibility of Hodge's account of Spann's attack on Canfield.

The Illinois Appellate Court found that "the strong evidence of defendant's guilt," ¶ 31, and the limited efficacy of impeaching Hurt, Spann cannot show prejudice from the supposed loss of his papers. Spann identified no lost materials or other evidence that would have undermined this proof or made his self-defense theory credible. *Id.* His vague assertion that missing documents might have supported his claims is speculative and falls far short of demonstrating the kind of substantial disadvantage required by *Frady.* 456 U.S. at 170. On this record, there is no reasonable probability that the result of his criminal proceedings would have been different if he had been able to include the unspecified materials he claims were lost. Accordingly, petitioner has not demonstrated prejudice sufficient to overcome his procedural default.

D.  Fundamental Miscarriage of Justice

Even when a petitioner cannot show cause and prejudice, a federal court may still review procedurally defaulted claims if necessary to prevent a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 299 (1995). This exception applies only in the rare and extraordinary case where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* To invoke it, the petitioner must present "new reliable evidence—where it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Id.* at 324. The standard is demanding: the petitioner must show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Id.* at 299.

Spann does not expressly invoke the fundamental miscarriage of justice exception, nor can he. The Court nonetheless addresses it to ensure a complete analysis of all possible ground for

review. Spann has not presented any new or reliable evidence suggesting he is actually innocent. 2022 IL App (1st) 210112-U. His self-defense claim, which the jury rejected, and the Illinois Appellate Court found unsupported by evidence, does not meet the *Schlup* standard. *Id.* Assertions that merely reargue trial evidence or challenge witness credibility do not constitute new evidence—scientific, testimonial, or physical—suggesting that Spann did not commit the stabbing or that his conviction rests on a constitutional error of such magnitude that it likely resulted in the conviction of an innocent person. Accordingly, the fundamental miscarriage of justice exception does not apply.

## **CERTIFICATE OF APPEALABILITY**

Having determined that none of Spann's claims warrant habeas relief, the Court denies his § 2254 petition. Petitioner is advised that this is a final decision ending his case in this Court.

The Court declines to issue a certificate of appealability. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability ("COA") may only issue if the petitioner makes "a substantial showing of the denial of a constitutional right." When dismissal rests on procedural grounds, the petitioner mut show that reasonable jurists could debate both the correctness of the procedural ruling and the validity of the underlying constitutional claim. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

Reasonable jurists could not debate this outcome. Claims (1) and (2) raise only non-federal questions, and Claims (3) and (4) were dismissed on independent and adequate state procedural grounds. Accordingly, the Court declines to issue a certificate of appealability.

## **CONCLUSION**

For the reasons stated above, the petition for writ of habeas corpus under 28 U.S.C. § 2254 is denied with prejudice. Claims (1) and (2) are non-cognizable, Claims (3) and (4) are procedurally defaulted, and no certificate of appealability shall issue. The Clerk is directed to 1) terminate Respondent Gomez, and replace him with Petitioner's current custodian, Ryan Woods,

Sheridan Correctional Center, 2) alter the case caption to *Spann v. Woods,* and 3) enter judgment in favor of Respondent and against Petitioner and terminate the case.

Date: November 4, 2025

John J. Tharp, Jr.
United States District Judge